

# NUMBER 13-11-00075-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

GILBERTO RINCONES,                                                      Appellant,

v.

WHM CUSTOM SERVICES, INC.,
ET AL.,                                                                 Appellees.

---

### On appeal from the 445th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela[1]
### Memorandum Opinion by Chief Justice Valdez

By three issues, which we will re-number, re-order, and address as eleven

issues, appellant, Gilberto Rincones, contends that the trial court erred with respect to

the following:   (1) granting a motion to dismiss filed by appellees WHM Custom

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in deciding this case because her term of office expired on December 31, 2012.

Services, Inc. ("WHM") and Exxon Mobil Corporation ("Exxon") and dismissing appellant's pattern and practice discrimination claims against WHM and Exxon with prejudice for lack of jurisdiction; (2) granting summary judgment in favor of WHM on appellant's claims for discrimination, retaliation, and defamation; (3) granting summary judgment in favor of Exxon on appellant's claims for discrimination, retaliation, defamation, negligence, and tortious interference with a contract; and (4) granting summary judgment in favor of appellee DISA, Inc. ("DISA") on appellant's claims for defamation, negligence, tortious interference with a contract, and breach of contract.

For the reasons set forth below, we conclude that the trial court erred in the following respects: (1) dismissing appellant's pattern and practice discrimination claims against WHM and Exxon for lack of jurisdiction; and (2) granting summary judgment in favor of DISA on appellant's negligence and tortious interference with a contract claims. We overrule appellant's other issues. Accordingly, the judgment of the trial court is affirmed in part and reversed in part.

## I. BACKGROUND

This is an employment-related case involving, among other things, a dispute over the accuracy of a workplace drug test and allegations of discrimination based on race or national origin. As set forth below, the issues in this case are hotly disputed. The following facts are not in dispute.

On April 10, 2008, DISA selected appellant for a random drug test. The parties agree that, at that time, appellant was employed by WHM and that WHM had engaged the services of DISA for purposes of administering its drug and alcohol policy. Appellant maintains that he was also employed by Exxon, but Exxon denies any

2

employment relationship.  Nevertheless, it is undisputed that appellant worked for WHM at a facility in Baytown, Texas that is owned and operated by Exxon.

On April 14, 2008, WHM's human resources manager, Mark Carter, informed appellant that there was a "problem" with his test and that he could not return to work for WHM or be assigned to work at Exxon facilities until he was "active" in DISA. Subsequently, appellant learned that he had allegedly failed his drug test because his urine sample allegedly tested positive for marijuana use.  Appellant denies that he used marijuana, denies that his urine sample tested positive, and denies that he failed his drug test.  As set forth below, appellant took a second drug test, conducted by a second facility, and the second test was negative for marijuana use.  Appellant informed DISA and WHM of his second test.   Nevertheless, appellant's DISA status remained "inactive," and he was not assigned further work.

On or about August 17, 2008, appellant filed for unemployment benefits with the Texas Workforce Commission ("TWC").  In September 2008, appellant received a letter from the TWC denying benefits on the basis that his employment with WHM had been terminated for drug use.  On or about November 24, 2008, appellant filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD").  Appellant named WHM and Exxon as his employers.  On May 26, 2009, appellant received a "Notice of Right to File Civil Action" letter from the TWC-CRD dated May 21, 2009.

Thereafter, appellant filed suit against WHM, Exxon, DISA, and others.[2] Appellant asserted claims against WHM for discrimination, retaliation, and defamation. Appellant asserted claims against Exxon for discrimination, retaliation, defamation,

---

[2] WHM, Exxon, and DISA are the only appellees before the Court in this matter.

negligence, and tortious interference with a contract. Appellant asserted claims against DISA for defamation, negligence, and tortious interference with a contract. In his fifth amended petition, appellant also asserted a claim against DISA for breach of contract.

On March 23, 2010, the trial court granted Exxon's no-evidence motion for summary judgment on appellant's discrimination, retaliation, and defamation claims. On March 23, 2010, the trial court also granted Exxon's traditional motion for summary judgment on appellant's discrimination, retaliation, and defamation claims. On November 16, 2010, the trial court entered the following orders:

(1) order granting Exxon and DISA's motion to strike appellant's fifth amended original petition;

(2) order granting WHM and Exxon's motion to dismiss;

(3) order granting DISA's motion for summary judgment;

(4) order granting Exxon's traditional and no-evidence motion for summary judgment on all claims; and

(5) order granting WHM's traditional and no-evidence motion for summary judgment.

The trial court did not state the basis for any of its rulings. Appellant non-suited all claims that were not dismissed by the trial court. This appeal ensued.

## II. PATTERN AND PRACTICE DISCRIMINATION CLAIMS

In his first issue, appellant argues that the trial court erred in dismissing his pattern and practice discrimination claims against WHM and Exxon for lack of jurisdiction.

## A. Applicable Law

The Texas Commission on Human Rights Act ("TCHRA") "is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal

4

Civil Rights Act of 1964." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (citing *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). The TCHRA requires a complainant to first exhaust his administrative remedies before filing a civil action. *Lueck v. State*, 325 S.W.3d 752, 761 (Tex. App.—Austin 2010, pet. denied). Failure to exhaust administrative remedies creates a jurisdictional bar to suit. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991). A subsequent suit "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Johnson v. Hoechst Celanese Corp.*, 127 S.W.3d 875, 878 (Tex. App.—Corpus Christi 2004, no pet.).

**B. Standard of Review**

A plea to the jurisdiction is a dilatory plea that seeks to defeat a cause of action by questioning the trial court's subject matter jurisdiction and should be decided "without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is at the heart of a court's power to decide a case. *See id*. "We review a trial court's order granting or denying a plea to the jurisdiction de novo." *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). In our review, we examine the plaintiff's petition and evidence submitted by the parties "to the extent it is relevant to the jurisdictional issue." *Id*.

When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction

5

on the court. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We examine the pleader's intent and construe the pleadings in the plaintiff's favor. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam). A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings affirmatively negate the existence of jurisdiction. *Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867.

## C. Appellant's Relevant Pleadings

In his live petition, appellant alleged a claim for pattern and practice discrimination as follows:

> Plaintiff Gilberto Rincones asserts and intends to prove that the treatment received by him from the Defendants WHM and EXXON was part of a pattern and practice engaged in by the Defendant employers and their employees towards several individuals similarly situated. This unwritten plan or scheme was to discriminate against, retaliate against, discharge or take some adverse employment action against Plaintiff and other similarly situated Hispanics of Mexican heritage/decent, thereby creating a hostile work environment.

Attached to appellant's live petition was a copy of his charge of discrimination, filed with the EEOC and TWC-CRD, which stated in relevant part as follows:

> I am a 37 year old Hispanic male who worked for WHM since 2007. While working with WHM, I was assigned to work for Exxon, under their direction and control as a Technician. I was a loyal, hardworking, and dedicated employee at all times. As a requirement to work at Exxon, I was required to take a drug test. On April 10, 2008, I was given a random drug test by Turn Around Incorporated, along with other non-Hispanic employees. Thereafter, I was terminated due to allegedly being tested positive for drug use, even though I told my employers that the test was mixed up or false. On April 14, 2008, I went to a lab where I paid for a test to be done, with my own money, which was negative, I provided this information to my employers and complained that other non Hispanic employees were treated differently because they were retested or allowed to prove the test was wrong. However, I was refused my position. I feel I am being discriminated against because I am Hispanic.

I believe that I was discriminated against because of my race in the manner described above, in violation of Title VII of the Civil Rights Act of 1964, as amended; and in violation of the Texas Commission on Human Right[s] Act, and retaliat[ed] against for reporting the harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Texas Commission on Human Rights Act.

**D. WHM's and Exxon's Motion to Dismiss**

In their motion to dismiss, WHM and Exxon argued that the trial court lacked jurisdiction with respect to appellant's pattern and practice discrimination claims:

> In his pleadings, Plaintiff Gilberto Rincones alleges, among other things, that he was the victim of a purported unidentified pattern and practice of discrimination towards Hispanics generally. However, prior to bringing suit for alleged employment discrimination, all Plaintiffs are required to meet certain statutory prerequisites, such as filing a written, sworn complaint with the Texas Commission of Human Rights, now the Texas Workforce Commission – Civil Rights Division ("TWC-CRD"), and exhausting the administrative procedures of the Texas Commission on Human Rights Act ("TCHRA"). The prerequisites also require that the charge filed identify the particular acts of discrimination alleged.
>
> Here, Plaintiff . . . failed to comply with the statutory mandate of filing a charge with the TWC-CRD as to his alleged pattern and practice claim. Although Plaintiff partially met the requirements by filing a charge, his charge specifically fails to include facts or allegations that present a "pattern and practice" claim of discrimination. Rather, Plaintiff's charge only alleges individual discrimination (as opposed to alleging facts that an employer treats a class of individuals in this manner). Accordingly, Plaintiff's failure to file a charge alleging facts relating to a pattern and practice of discrimination deprives this Court of subject matter jurisdiction over his alleged "pattern and practice" cause of action. Therefore, the Court should dismiss Plaintiff's claim concerning any alleged pattern and practice of discriminatory conduct based on a lack of subject matter jurisdiction.

**E. Appellant's Response to WHM and Exxon's Motion to Dismiss**

In his response, appellant argued that there was no merit to the jurisdictional challenge made by WHM and Exxon:

> Defendants Exxon and WHM seek to have Plaintiff's discrimination claims dismissed alleging that this Court does not have jurisdiction to hear such

7

claims because Plaintiff did not use the term "pattern and practice" in the Charge. Because the Charge was sufficient to put Defendants Exxon and WHM on notice of Plaintiff's discrimination claims and the basis for same (e.g. race/national origin discrimination against Plaintiff, a Hispanic employee), he is entitled to bring all claims reasonably expected to grow from the scope of the agency's investigation into the Plaintiff's allegations to the TWC-CRD. As such, Defendants['] motion to dismiss must be denied.

Appellant also argued as follows:

There is no question that Plaintiff's charge made allegations of improper and discriminatory conduct in regards to the Defendants['] drug testing policy because he is Hispanic. The evidence developed to date and on file with this Court is clear that non-Hispanic employees were treated differently and allowed to gain "active" status and continue to work in regards to the drug policy, while Plaintiff, a Hispanic individual, was not allowed to regain "active" [status] and was ultimately fired. An EEOC investigation of whether other Hispanics were discriminated against in regards to the implementation of the drug testing policy could reasonably grow out of these [sic] investigation. Therefore, as the 5th Circuit and Texas appellate courts have consistently ruled, Plaintiff's allegations in the Charge of Discrimination, in and of itself, are sufficient to provide the trial court jurisdiction regarding the allegations or theories which may prove discrimination, including pattern and practice allegations.

## F. Discussion of WHM's and Exxon's Motion to Dismiss

As set forth above, a lawsuit under the TCHRA "is limited to the complaints made in the discrimination charge and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Johnson*, 127 S.W.3d at 878. In this case, we conclude that appellant's claims for pattern and practice discrimination are factually related to his claims for discrimination based on race and national origin. In his charge, appellant alleged that non-Hispanic employees were being treated differently. This allegation suggests a group-wide discriminatory practice in which non-Hispanic employees were treated more favorably than Hispanic employees. Therefore, we conclude that the trial court has jurisdiction to hear

8

appellant's pattern and practice discrimination claims because they are "factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge." *Id.*

Accordingly, appellant's first issue is sustained.

### III. Discrimination Claims Against WHM

In his second issue, appellant argues that the trial court erred in granting summary judgment in favor of WHM on his claims for discrimination based on race or national origin.

### A. Applicable Law

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LABOR CODE ANN. § 21.051 (West 2006); *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010) ("The TCHRA contemplates discrimination affecting the terms, conditions, or privileges of employment."). "Subsection (1) concerns 'disparate treatment' claims; subsection (2) concerns 'disparate impact' claims." *Nw. Res. Co. v. Banks*, 4 S.W.3d 92, 93 (Tex. App.—Waco 1999, pet. denied). "[D]isparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Ojo v. Farmers Group, Inc.*, 356 S.W.3d 421, 426 (Tex. 2011) (quotations omitted). "In such disparate-

9

treatment cases, proof and finding of discriminatory motive is required." *Id*. (quotations omitted). "[D]isparate impact claims . . . involve facially neutral practices that operate to exclude a disproportionate percentage of persons in a protected group and cannot be justified by business necessity." *Id*. (quotations omitted).[3] "The United States Supreme Court has similarly distinguished between disparate treatment discrimination and disparate impact discrimination, noting that the former is discrimination against others because of their race, while the latter encompasses practices that are facially neutral but that in fact fall more harshly on one group than another." *Id*. (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n.15 (1976)). The parties agree that this case involves allegations of disparate treatment.

There are two types of employment discrimination claims involving disparate treatment, "each requiring different elements of proof." *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). "The first type is the 'pretext' case, in which the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination." *Id*. "The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false." *Id*. "The second type of case is the 'mixed-motive' case, in which the plaintiff has direct evidence of discriminatory animus." *Id*. "This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives." *Id*. "[H]ow a case will be classified depends entirely upon the presence or absence of direct

---

[3] *See* TEX. LABOR CODE ANN. § 21.122(a)(1) (West 2006) ("An unlawful employment practice based on disparate impact is established under this chapter only if a complainant demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . and the respondent fails to demonstrate that the challenged practice is job-related for the position in question and consistent with business necessity . . . .").

10

evidence." *Id*. "If the plaintiff has only circumstantial evidence of discrimination, it will be classified as a pretext case regardless of how many motives the employer had." *Id*. at 477. The parties agree that this is a pretext case.

**B. *McDonnell Douglas* Burden-Shifting Analysis**

"The [United States] Supreme Court defined the order and allocation of proof for a pretext case in *McDonnell Douglas* and *Burdine*." *Id*.; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 438–39 (Tex. App.— Houston [14th Dist.] 2002, pet. denied) ("Texas courts invoke *McDonnell Douglas* in employment discrimination cases brought under state law."). The United State Supreme Court has summarized the allocation of the burden of proof in employment discrimination cases as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53 (quotations and citations omitted); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court.").

"In discrimination cases brought under the TCHRA, a prima facie case of discrimination is made by showing that the plaintiff (1) is within a protected group, (2) was adversely affected or suffered an adverse employment action, and (3) similarly

11

situated nonprotected class members were not treated similarly." *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 375 (Tex. App.—Fort Worth 2006, no pet.). Appellant's "burden at this stage of the case is not onerous." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "The prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.*

"After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate legitimate, nondiscriminatory reasons for any allegedly unequal treatment." *Herbert*, 189 S.W.3d at 375. "If the defendant presents a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, 'motivating,' factor." *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "A plaintiff demonstrates pretext by producing evidence that (1) the reason given by the employer was not its true reason for the employment action but rather a pretext for discrimination or (2) the reason given was unworthy of credence." *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also Quantum Chem.*, 47 S.W.3d at 476 ("The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false.").

## C. Standard of Review

We review summary judgments de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.). In a traditional motion for summary

12

judgment, the movant has the burden of showing both that there is no genuine issue of material fact and entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.). In deciding whether there is a genuine issue of material fact, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are made, and all doubts are resolved, in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id.*; *see also Duvall v. Tex. Dep't of Human Servs*., 82 S.W.3d 474, 477 (Tex. App.—Austin 2002, no pet.) ("A defendant who moves for [traditional] summary judgment must disprove at least one essential element of the plaintiff's causes of action."). The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Swilley*, 488 S.W.2d at 68.

A no-evidence summary judgment is equivalent to a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied). We review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *see also Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) ("We must review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."). "A motion for

13

summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam).

If the nonmovant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i); *Buck*, 381 S.W.3d at 527 n.2 ("The ultimate question is simply whether a fact issue exists."). All that is required of the non-movant is to produce more than a scintilla of probative evidence to raise a genuine issue of material fact. *Zapata*, 997 S.W.2d at 747. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion. *See* TEX. R. CIV. P. 166a(i). "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck*, 381 S.W.3d at 527.

WHM's motion for summary judgment was a hybrid motion for summary judgment, raising five traditional and no-evidence grounds. Both WHM and appellant brought forth summary judgment evidence in the context of this hybrid motion.

Therefore, the "ultimate question is simply whether a fact issue exists." *Buck*, 381 S.W.3d at 527 n.2 ("Both parties brought forth summary judgment evidence in the context of this hybrid no-evidence and traditional motion, so the differing burdens of the two forms of summary judgment motion are of no import here. The ultimate question is simply whether a fact issue exists."). For this Court to reach a final disposition of appellant's second issue, it is only necessary to address the fifth ground for summary judgment asserted in WHM's hybrid motion. Accordingly, our discussion of appellant's second issue will be limited to that ground for summary judgment. *See* TEX. R. APP. P. 47.1.[4]

## D. WHM's Fifth Ground for Summary Judgment

The fifth ground for summary judgment raised in WHM's hybrid motion for summary judgment is the following:

> To support a claim for disparate treatment as alleged by Plaintiff, he must demonstrate that he was treated differently than other similarly situated persons. In Texas, similarly situated is an exacting standard such that the person used by a plaintiff to support his claim must be "nearly identical." To be "similarly situated," Plaintiff must show that the circumstances are comparable in all material respects, including the same conduct, same personnel/supervisor, same job title of employee and same standards.

> It is undisputed that WHM had no involvement in the selection of Plaintiff of any person for random drug testing. Furthermore, Plaintiff has no evidence that non-Hispanics were treated differently. Plaintiff only has hearsay knowledge that some non-Hispanics failed a drug test, but no knowledge as to the circumstances, job description, timing, whether the persons continued working etc. Plaintiff cannot identify any persons to support that non-Hispanics were treated differently in any manner by WHM. Plaintiff cannot identify any other WHM employees that were tested by DISA in April 2008. Plaintiff's essential complaint is that WHM

---

[4] Specifically, as a result of our holding with respect to WHM's fifth ground for summary judgment, we conclude that "[t]he issues presented [with respect to WHM's other grounds] are [consequently] no longer 'live.'" *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002). Our decision must be limited to only those issues "raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1.

15

simply would not accept Plaintiff's drug test result from a different, non-DISA approved facility (San Benito Medical Associates) to continue working for WHM at ExxonMobil Baytown. There is no evidence that WHM or DISA or ExxonMobil has ever accepted such a test to substitute for a positive DISA test. Moreover, the complaint is unrelated to any allegations of race/national origin discrimination, and Plaintiff's conclusory allegations and subjective beliefs are not enough to defeat a properly supported motion for summary judgment.

Alternatively, Plaintiff may be asserting that non-Hispanics have been allowed to "retest." However, WHM is not aware of any persons allowed to retest. Simply put, WHMS's Agreement with ExxonMobil requires that all persons who work on ExxonMobil facilities be DISA active regardless of race/national origin. Therefore, the evidence shows that Plaintiff's allegations are without merit, and the Court should grant summary judgment.

In addition, in its third ground for summary judgment, WHM also argued that there was no evidence (1) that any person was treated differently or (2) that DISA applied its policies and procedures differently to appellant as opposed to any other person. We construe the foregoing as a no-evidence ground for summary judgment.

As set forth above, WHM argued that there was no evidence that similarly situated nonprotected class members were not treated similarly. Specifically, WHM argued that "Plaintiff cannot identify any persons to support that non-Hispanics were treated differently in any manner by WHM." Thus, to avoid summary judgment, all that was required of appellant, as the non-movant, was to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the issue of whether similarly situated nonprotected class members were not treated similarly. *See Acosta v. Gov't Employees Credit Union*, 351 S.W.3d 637, 641 (Tex. App.—El Paso 2011, no pet.) (explaining that plaintiff "was required to establish, among other things, that she was treated less favorably than a similarly situated non-Hispanic employee").

**E. Appellant's Response to WHM's Fifth Ground for Summary Judgment**

16

In his response, appellant argued that he "had identified at least 3 other non-Hispanic employees who failed drug tests [and] were allowed to continue working for WHM at Exxon facilities." In relevant part, appellant argued as follows:

Defendant alleges that there [is] no issue of fact regarding Plaintiff's random selection for drug testing. Plaintiff's discrimination claim is not based on his selection for drug testing; rather, Plaintiff alleges that Plaintiff, a Hispanic employee of Mexican descent, was treated differently than other, non-Hispanic employees who also tested positive for drugs. For this reason, Plaintiff's response will focus solely on why that is an issue of material fact.

Plaintiff identified 3 different WHM employees that were allowed to continue working for WHM after testing positive for drugs. Tom Davis and Mark Sweet (both Anglo Males) and Cooper (Black Male). WHM points to various aspects of Plaintiff's deposition testimony in support of its position that there is no evidence [of] retaliation; however, Plaintiff's testimony was clear that when he was told by WHM in April 2008 that he would have to deal with DISA to "work it out," he did as he was instructed. However, DISA, the designated testing agent for WHM (and by contract EXXON), refused to accept his San Benito test results or allow him to retest, in violation of their own policies. Thereafter, he complained to Mark Carter and 2 other WHM supervisors that WHM employees Davis, Sweet and Cooper who failed the test were allowed to continue working for WHM. Plaintiff was officially terminated approximately 6 months later.

Plaintiff testified that he complained to WHM that non-Hispanic employees who failed a drug test[] were allowed to continue working after DISA failed to assist him in resolving the issue and prior to his ultimate termination. The affidavit of WHM employee attached as Exhibit "A" to WHM's motion confirms that Plaintiff complained off [sic] other employees [with] similar situations, who happen to be non-Hispanic, although he denies that Plaintiff mentioned race or national origin. Clearly, material fact issues [exist] regarding Plaintiff's discrimination claims, and the summary judgment should be denied.

In its motion for summary judgment, WHM argued the following with respect to appellant's testimony: "Importantly, Plaintiff admitted in his deposition that he has no personal knowledge that other employees of WHM were treated differently and that his

17

knowledge regarding Tony Davis, or any other person, is based on 'rumors or hearsay.'"

WHM also argued the following:

> Plaintiff alleges that two WHM employees, Tony Davis and Mark Sweet, were allowed to retest to obtain an "active" DISA status. However it is undisputed that Plaintiff's allegation is based on rumor and hearsay knowledge. Thus, there is no evidence that any person was treated differently. . . .

> Plaintiff has no evidence that non-Hispanics were treated differently. Plaintiff only has hearsay knowledge that some non-Hispanics failed a drug test, but no knowledge as to the circumstances, job description, timing, whether the persons continued working, etc. Plaintiff cannot identify any persons to support that non-Hispanics were treated differently in any manner by WHM.

In his response, appellant clarified the nature of his evidence:

> Plaintiff's evidence is his own testimony. Plaintiffs [sic] have sought relevant discovery to confirm Plaintiff's allegation; however, Defendant WHM has failed to provide discovery. Plaintiff has a motion to compel on this issue pending with the Court.

In his response, appellant also stated as follows:

> To be clear, Plaintiff also offers the evidence of the 3 non-Hispanic employees who allegedly failed drug tests but [were] allowed to continue working for WHM as other evidence . . . . However, because Defendants have failed and/or refused to allow discovery regarding these 3 [e]mployees, [Plaintiff] can offer nothing more than his own testimony.

**F. WHM's Written Objections to Appellant's Summary Judgment Evidence**

In addition to the arguments made in its motion for summary judgment, WHM also filed objections to appellant's summary judgment evidence on the following basis:

> Plaintiff's Response relies on the deposition testimony of Plaintiff, Gilberto Rincones, to establish that other non-Hispanic persons who tested positive were treated differently than Plaintiff (Hispanic) because they were allowed to re-test or continue to work. Specifically, Defendant[] object[]s to Plaintiff's evidence in paragraph 22, page 15 that "Plaintiff identified 3 different WHM employees that were allowed to continue working for WHM after testing positive for drugs: Tom Davis and Mark Sweet (both Anglo Males) and Cooper (Black Male)." Plaintiff's purported

18

evidence is not competent summary judgment evidence as it is inadmissible hearsay and lacks foundation. *See* TRE 802. *See also* Plaintiff's deposition page 210 - 213 (Plaintiff claims "he was told" others tested positive but allowed to work). The Court should sustain Defendants' objection and not consider Plaintiff's evidence.

## G. Discussion of WHM's Fifth Ground for Summary Judgment

We conclude that appellant's testimony was not competent summary judgment evidence. "To constitute competent summary judgment evidence, the evidence must be admissible." *Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, pet. denied). "[N]o difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial." *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam). Appellant testified to hearing an out-of-court statement by WHM's human resources director, Mark Carter, to the effect that three other WHM employees had tested positive for drug use and were able to return to work. Appellant's testimony based solely on his conversation with Mark Carter is hearsay. *See* TEX. R. EVID. 801(d) ("Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *Southland Corp. v. Lewis*, 940 S.W.2d 83, 85 (Tex. 1997) ("Mr. Long's affidavit, which was based solely on his notes from the interview, is clearly inadmissible hearsay which was properly objected to by 7-Eleven. Accordingly, it is not competent summary judgment proof."). Hearsay is generally inadmissible. *See* TEX. R. EVID. 802 ("Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority."). Appellant's testimony does not fit within any exception to the hearsay rule. Therefore, "[it] may not be made the basis of a summary judgment." *Youngstown Sheet*

19

*& Tube Co. v. Penn*, 363 S.W.2d 230, 233 (Tex. 1962). We conclude that appellant's testimony was inadmissible hearsay.

Furthermore, the remainder of appellant's testimony "is so weak as to do no more than create a mere surmise or suspicion" that similarly situated nonprotected class members were not treated similarly. *See Montemayor v. Ortiz*, 208 S.W.3d 627, 648 (Tex. App.—Corpus Christi 2007, pet. denied) ("The evidence is no more than a scintilla and, in legal effect, is no evidence when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence.") (quotations omitted). Appellant's deposition testimony does not rise to a level that would enable reasonable and fair-minded people to reach different conclusions. *See id*. ("Conversely, more than a scintilla exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."). The only conclusion that can be reached is that there is a complete absence of evidence of vital facts involving the circumstances of the three employees that appellant alleges were "similarly situated." Therefore, appellant failed to meet his burden of producing competent summary judgment evidence raising a genuine issue of material fact regarding whether similarly situated nonprotected class members were not treated similarly. *See Herbert*, 189 S.W.3d at 375. We conclude that summary judgment was appropriate on this basis. *See Greathouse v. Alvin Indep. Sch. Dist*., 17 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("Summary judgment for the defendant is proper when a plaintiff claiming race discrimination presents only conclusory allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings."); *see also Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.

20

1997) ("Conclusory statements . . . are insufficient to support or defeat summary judgment.").

Appellant's second issue is overruled.

## IV.  RETALIATION CLAIM AGAINST WHM

In his third issue, appellant argues that the trial court erred in granting summary judgment in favor of WHM on his retaliation claim.

### A.  Applicable Law

Section 21.055 of the Texas Labor Code provides as follows:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

> (1) opposes a discriminatory practice;
>
> (2) makes or files a charge;
>
> (3) files a complaint; or
>
> (4)  testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

TEX. LABOR CODE ANN. § 21.055 (West 2006).

"A prima facie case of retaliation consists of the following elements: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision." *West v. Maint. Tool & Supply Co.*, 89 S.W.3d 96, 105 (Tex. App.—Corpus Christi 2002, no pet.).  "An employer's action is an adverse employment action for purposes of a retaliation claim when it is harmful to the point that it could dissuade a reasonable worker from making or supporting a charge of discrimination."  *Cox v. Waste Mgmt. of Tex., Inc.*, 300 S.W.3d 424, 438 (Tex. App.—

21

Fort Worth 2009, pet. denied). "A plaintiff asserting a retaliation claim must establish that, without his protected activity, the employer's prohibited conduct would not have occurred when it did." *Herbert*, 189 S.W.3d at 377. "That is, the plaintiff must establish a 'but for' causal nexus between the protected activity and the employer's prohibited conduct." *Id*. "The plaintiff need not establish that the protected activity was the sole cause of the employer's prohibited conduct." *Id*. "The burden then shifts in the same manner as it does with regard to discrimination claims." *Id*.; *see also Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.) ("A burden-shifting analysis, similar to the wrongful-discharge burden-shifting analysis, applies to retaliation claims.").

## B. Appellant's Relevant Pleadings

In his live petition, appellant alleged that the following occurred after he informed DISA and WHM of the negative results of the "San Benito" test:

> Plaintiff further requested to be tested again, and/or inquired as to what else needed to be done so that he could go back to work; however, Defendants failed and/or refused his requests and failed to follow all the Defendants['] drug testing policies.
>
> Plaintiff also complained that he was aware of other non-Hispanic employees that were allowed to retest as a result of a false positive result and allowed to return to work. Despite Plaintiff's requests and complaints, Defendants refused and/or failed to provide the opportunity to take another drug test, and [as] a result[,] Defendants WHM and EXXON refused to allow Plaintiff to return to work.
>
> On or about September 11, 2008[,] Plaintiff learned for the first time that he had been fired after testing positive for drug use. Plaintiff again immediately contacted Defendants WHM and/or Exxon and again complained that other non-Hispanic employees were treated differently because they were either retested or allowed to prove the test was wrong, and were not terminated. However, Plaintiff—a Hispanic-American of Mexican descent/heritage—was refused this opportunity and was told he had been fired.

22

. . .

Mr. Rincones asserts that he was wrongfully and illegally retaliated against following his opposition and complaint of discrimination.

## C. WHM's Grounds for Summary Judgment

In its motion for summary judgment, WHM argued as follows:

Plaintiff was randomly drug tested on April 10, 2008, and his only alleged protected activity was that he complained to WHM on or about April 14, 2008. At that time, DISA and WHM informed Plaintiff that he was not allowed to return to an ExxonMobil facility until he became "active" in DISA.

However, Plaintiff admits that he never complained to WHM that the random drug testing was discriminatory because of his race/national origin (Hispanic). Plaintiff admits that he never "complained [to WHM] that other non-Hispanic employees were being treated differently." [P]laintiff testified that he only complained to his lawyer. Rather, Plaintiff's sole complaint at the time was that he never used drugs and the test had to be wrong. Having never complained or opposed any discriminatory practice of which WHM was aware, Plaintiff cannot establish a prima facie case of retaliation, and WHM is entitled to summary judgment.

Additionally, WHM first became aware of any complaint by Plaintiff alleging any form of discrimination when it received the charge of discrimination dated November 24, 2008. On this date, all of the alleged adverse action—being selected for the testing, the test results and the inability to return to work at an ExxonMobil facility—had already occurred and cannot form the basis of any retaliation claim as a matter of law.

Finally, it is undisputed that WHM took no adverse action in response to Plaintiff's charge of discrimination. At the time the charge of discrimination was received by WHM, Plaintiff still had the same inactive DISA status and was "ineligible" to work on ExxonMobil property. Plaintiff's status was the same as it had been since the notification on April 14, 2008. Plaintiff admits that he was not fired by WHM, and he just needed to obtain an active status with DISA to work for WHM on ExxonMobil's properties. Accordingly, WHM took no adverse action against Plaintiff that can support a claim for retaliation, and summary judgment should be granted.

We construe the foregoing as a traditional ground for summary judgment, challenging all three elements of appellant's prima facie case of retaliation: (1) appellant engaged in

23

a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between appellant's participation in the protected activity and the adverse employment decision. *See West*, 89 S.W.3d at 105.

## D. WHM's First Ground for Summary Judgment

In his live petition, appellant alleged two different protected activities: (1) opposing disparate treatment; and (2) filing a charge of discrimination. "[O]pposition to a discriminatory practice is a protected activity under the TCHRA." *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 224 (Tex. App.—San Antonio 1998, pet. denied). "Under the first prong, to establish that the employee opposed a discriminatory practice, the employee must demonstrate a good faith reasonable belief that the underlying discriminatory practice of the employer violated the law." *Id*. "The employee is not required to show that there was actual existence of an unlawful practice, only that she held a good faith reasonable belief that the employer engaged in activity made unlawful by Title VII or the TCHRA." *Id*. "Second, the employee must demonstrate that she reported the challenged activity to the employer." *Id*.

According to WHM, the summary judgment evidence establishes that appellant never reported the challenged activity to WHM. WHM relies on appellant's deposition testimony:

Q     Now, it says here you complained that other non-Hispanic employees were treated differently. Who did you complain to?

A     Where does it say that?

Q     The fourth line up from the bottom of the text of the large paragraph on Page 1 . . . . "And complained that other non-Hispanic employees were treated differently." You see that?

A     Yes.

24

Q      Who did you complain to?

A      I told my lawyer.

Q      Okay.  Anybody else?

A      No.

. . .

Q      Now, when did you say that, "This was because I'm Hispanic?"

A      When did I say that?

Q      Yes, sir.

A      You want a time frame?

Q      Yeah.  I want to know who you told that to.

A      I didn't tell anybody that.

Q      You never told anybody that, "This is because I'm Hispanic," did you?

A      No.  I don't recall saying that.

. . .

Q      You say you complained.  And all you complained of is—what you're calling complained is you questioned why some other people were working that you believed tested positive?

A      That I believe, yes.

Q      Okay.  Had nothing to do with your race?  And you never mentioned your race, did you?

A      To who?

Q      When you complained.

A      They knew my race.

Q      Did you even mention it?

25

A     No.

Q     Okay.  You never said, "This is because of my race"?

A     I told them how come—why—why—why those two other guys had been able to work . . . .   And the black guy.  And I wasn't.

Q     You didn't say—did you say, "Why am I being denied work because I'm Hispanic"?  Did you mention that?

. . .

A     I don't recall.

Q     Okay.  Did you say, "Why are you letting black guys work"?

A     No, I didn't.

Q     You just said, "Why does Tony Davis get to work," right?

A     Yes.

Q     "And why is Mr. Cooper getting . . . [to work]," correct?

A     Correct.

Q     That's all you said; is that correct?

A     Yes.

We conclude that the foregoing demonstrates that appellant never actually complained to WHM that he was being treated differently based on his race or national origin.  Appellant testified that he told his lawyer that non-Hispanic employees were being treated differently.  However, appellant testified that he never complained to WHM that he was being treated differently because he was Hispanic.  According to appellant, he asked WHM why two other employees were allowed to work and he was not.  Appellant asked why he was being treated differently.  He did not state that he was being treated differently because of his race or national origin.  He did not state that

26

non-Hispanic employees were being treated differently. He did not complain about discrimination.[5] He did not voice opposition to any alleged discrimination. *See City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008) ("[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the [T]CHRA, regardless of whether the employee has already filed a formal complaint with the Commission."). At most, appellant's questions may have hinted at the vague possibility of discrimination, which is not sufficient to be protected activity. *See Azubuike v. Fiesta Mart*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("A vague charge of discrimination will not invoke protection under the statute."). Accordingly, we conclude that the burden shifted to appellant to produce competent summary judgment evidence raising a genuine issue of material fact regarding whether he engaged in protected activity. *See M. D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) ("The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense.").

## E. Appellant's Response to WHM's First Ground for Summary Judgment

In his response, appellant argued as follows:

---

[5] *See Marsaglia v. Univ. of Tex.*, 22 S.W.3d 1, 4–5 (Tex. App.—El Paso 1999, pet. denied) ("Appellant's deposition testimony establishes that she spoke with Dr. Keller on more than one occasion regarding what she believed to be Dr. Pingitore's sexual harassment of others. Appellant testified that she followed the UTEP sexual harassment policy by reporting what she believed to be sexually harassing conduct to her supervisor, Dr. Keller. She also testified that she let Dr. Pingitore know by her actions and body language that she found certain comments to be offensive. Obviously, sexual harassment is an unlawful employment practice."); *see also Attieh v. Univ. of Tex. at Austin*, No. 03-04-00450-CV, 2005 Tex. App. LEXIS 4662, at *15 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) ("In complaining about the changes under the new Chair, Attieh never mentioned race or national origin. Therefore, Attieh did not put the University on notice that she was complaining about unlawful discrimination, as opposed to administrative decisions. Consequently, her complaints about changes in the Department do not constitute a protected activity.").

27

Plaintiff has provided some evidence that he was terminated after he complained that other non-Hispanic employees who failed drug tests were allowed to continue working for Exxon . . . . After WHM refused to allow him back to work at Exxon, Plaintiff complained to WHM management and supervisors that other non-Hispanic employees who failed drug tests were allowed to continue working. Plaintiff was fired for allegedly failing a drug test in September 2008, after he had complained of the disparate treatment of other non-Hispanic employees who failed drug tests but were allowed to continue working for WHM and Exxon . . . . Plaintiff complained to Mark Carter and 2 other WHM supervisors that WHM employees Davis, Sweet and Cooper who failed the test were allowed to continue working for WHM. Plaintiff was officially terminated approximately 6 months later.

In his response, appellant cited to his deposition testimony:

Q      Did you ever complain about that to anyone at WHM?

A      I think I told my brother-in-law.

Q      Okay.

A      I told him, "Well, how come Tony Davis is allowed to work and I'm not?"

. . .

Q      What is your brother-in-law's name again?

A      Raul Gonzalez.

Q      And who does he work for?

A      WHM.

Q      And what position does he keep?

A      Superintendant.

. . .

Q      Is there anyone else other than your brother-in-law that you told at WHM?

A      I believe I told—I did tell Ruben Padilla once.

. . .

Q      And what is Mr. Padilla's position?

A      He's a superintendant also.

Q      For who?

A      WHM.

. . .

Q      Anyone other than your brother-in-law and Ruben Padilla with WHM?

A      Mark Carter.

. . .

Q      What do you remember telling Mark Carter?

A      That—man, I called him and told him how come Tony Davis was still working and I couldn't.  And he didn't explain to me why.  He just told me, "Well, he's working in Louisiana, but he can no longer work in Baytown."

## F.  Discussion of WHM's First Ground for Summary Judgment

Although appellant argued that this evidence establishes that he "complained of the disparate treatment of other non-Hispanic employees who failed drug tests but were allowed to continue working for WHM," we disagree.  According to appellant's testimony, he asked why the other employees were allowed to continue working.  He did not state that he was being treated differently because of his race or national origin.  Appellant's questions did not "voice opposition" to any alleged discrimination.  *See City of Waco*, 259 S.W.3d at 152.  Again, appellant's questions may have hinted at a vague possibility of discrimination, but that is not protected activity.  *See Azubuike*, 970 S.W.2d at 65.  Even if appellant believed otherwise, his deposition testimony does not establish that he actually reported discriminatory conduct to WHM.  *See Cox & Smith*, 974

29

S.W.2d at 224; *see also Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.) ("[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge claim."). Accordingly, we conclude that WHM established that appellant did not engage in the protected activity of opposing a discriminatory practice.

As set forth above, however, appellant did engage in the protected activity of filing a charge of discrimination. Accordingly, we consider WHM's grounds for summary judgment with respect to appellant's claim of retaliation based on this protected activity.

## G.  WHM's Second Ground for Summary Judgment

As set forth above, WHM also moved for summary judgment on the basis that it had negated the element of adverse action. WHM's summary judgment evidence established that appellant's charge of discrimination was dated November 24, 2008. According to WHM, "[o]n this date, all of the alleged adverse action—being selected for the testing, the test results and the inability to return to work at an ExxonMobil—had already occurred and cannot form the basis of any retaliation claim as a matter of law." According to WHM, "[a]t the time the charge of discrimination was received by WHM, Plaintiff still had the same inactive DISA status and was 'ineligible' to work on ExxonMobil property. Plaintiff's status was the same as it had been since the notification on April 14, 2008." Accordingly, we conclude that the burden shifted to appellant to produce competent summary judgment evidence raising a genuine issue of material fact regarding whether he suffered an adverse employment action as a result of his charge of discrimination. *See M. D. Anderson*, 28 S.W.3d at 23.

## H.  Appellant's Response to WHM's Second Ground for Summary Judgment

30

In his response, appellant argued that he had produced "some evidence" that he was terminated "after he complained other non-Hispanic employees who failed drug tests were allowed to continue working for Exxon." In his response, however, appellant also states that "Defendant WHM officially terminated Plaintiff on September 2008."

## I. Discussion of WHM's Second Ground for Summary Judgment

In his response, appellant did not argue or attempt to offer evidence that he suffered any adverse employment action after he was terminated in September 2008. Moreover, appellant did not argue or offer any evidence to establish that he suffered any adverse employment action in response to his charge of discrimination dated November 24, 2008. Accordingly, we conclude that WHM established that it was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

Appellant's third issue is overruled.

## V. DISCRIMINATION AND RETALIATION CLAIMS AGAINST EXXON

In his fourth issue, appellant argues that the trial court erred in granting Exxon's motion for summary judgment on his claims for discrimination and retaliation because there is a genuine issue of material fact with regard to whether Exxon was his employer under a theory of indirect employment. In his fifth issue, appellant argues that the trial court erred in granting Exxon's motion for summary judgment on his claims for discrimination and retaliation because there is a genuine issue of material fact with regard to whether Exxon was his employer under a theory of joint employment.

## A. Exxon's Grounds for Summary Judgment

In its no-evidence motion for summary judgment, Exxon argued that it was entitled to judgment as a matter of law on appellant's claim for discrimination because,

among other things, there is no evidence that "non-protected class employees (non-Hispanics) were treated differently."[6] In addition, Exxon argued that it was entitled to judgment as a matter of law on appellant's claims for retaliation because, among other things, there is no evidence that appellant opposed a discriminatory practice or complained to Exxon about a discriminatory practice prior to his termination.[7] As noted above, the trial court granted Exxon's no-evidence motion for summary judgment.

## B. Appellant's Response to Exxon's Grounds for Summary Judgment

In his response, appellant argued in relevant part as follows:

> [T]here is ample evidence attached that . . . other non-Hispanic employees were allowed to continue working for Exxon after failing drug tests. In addition, Plaintiff has provided some evidence that he was terminated after he complained that other non-Hispanic employees who failed drug tests were allowed to continue working for Exxon. Therefore, Plaintiff has supported the elements for his discrimination and retaliation claims [against Exxon.]

The evidence on which appellant relied was his deposition testimony, which we quoted in relevant part in our analysis of appellant's second and third issues.

## C. Discussion

Assuming without deciding that Exxon was appellant's employer, we conclude that Exxon nevertheless established its entitlement to judgment as a matter of law on both claims. For the reasons set forth above in our discussion of appellant's second issue, we conclude that there is no competent evidence that similarly situated nonprotected class members were not treated similarly. *See* TEX. R. APP. P. 47.1. Accordingly, summary judgment in favor of Exxon was appropriate on appellant's

---

[6] As set forth above in our discussion of appellant's second issue, this is an essential element of appellant's prima facie case of discrimination based on race or national origin.

[7] As set forth above in our discussion of appellant's third issue, this is an essential element of appellant's prima facie case of retaliation.

discrimination claim. *See* TEX. R. CIV. P. 166a(i). In addition, for the reasons set forth above in our discussion of appellant's third issue, we conclude that appellant did not present competent evidence to raise a genuine issue of material of fact regarding his alleged opposition to a discriminatory practice prior to his termination. *See* TEX. R. APP. P. 47.1. Accordingly, summary judgment in favor of Exxon was appropriate on appellant's retaliation claim. *See* TEX. R. CIV. P. 166a(c).

Appellant's fourth and fifth issues are overruled.

## VI. DEFAMATION CLAIM AGAINST WHM

In his sixth issue, appellant argues that the trial court erred in granting summary judgment in favor of WHM on his defamation claim.

### A. Applicable Law

A defamation claim of a private plaintiff against a non-media defendant consists of five elements:

1.      the defendant published a factual statement about the plaintiff;

2.      the statement was defamatory;

3.      the statement was false;

4.      the defendant acted with negligence concerning the truth of the statement; and

5.      the plaintiff suffered injury.

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *French v. French*, 385 S.W.3d 61, 72 (Tex. App.—Waco 2012, pet. denied). "A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001

33

(West 2011). "A statement that falsely charges a person with the commission of a crime is defamatory per se." *French*, 385 S.W.3d at 72.

"[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Id*. "Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege." *Id.* "In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Id*. "To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Id*.

## B. Appellant's Relevant Pleadings

In his live petition, appellant alleged the following with respect to his defamation claims:

> Defendants, by and through their agents, servants and employees, through the careless, inaccurate and negligent drug testing of Plaintiff, made certain statements about the Plaintiff that were false; namely, that Plaintiff tested positive for illicit and/or illegal drug use. Defendants continued to make such false and malicious statements even after [they were] provided with proof that such statements were false which raised concerns that Plaintiff had abused illicit and illegal drugs, thus attacking and damaging Plaintiff's reputation, character, credibility, and integrity. The inaccurate test results not only directly caused Plaintiff to lose his job, but damaged Plaintiff's reputation, credibility, and integrity, as he has a history of being an honest individual who never used illicit drugs. Further, these statements were published, in the form of the false and inaccurate test results, to the Plaintiff and others, including Plaintiff's current employer, L & F Distributors. These publications were made with malice

34

and lack of good faith. These defamatory statements have injured the Plaintiff in his business, trade, occupation and/or profession, and in his ability to obtain future similar employment.

Defendants disseminated and further published the inaccurate test results to other parties, namely the Texas Work Force Commission and others, further damaging the Plaintiff's reputation, credibility and integrity. In addition, because the Defendant employers relied on the false-positive drug test as the reason or basis of their termination and/or refusal to put Plaintiff to work, they knew or should have known that Plaintiff would have to publish this fact to future or prospective employers, which in fact Plaintiff was required to do. As such, Plaintiff was forced to disclose, and did disclose to his current employer, L & F Distributors, the reasons for his termination from the Defendants.

Defendants knew that Plaintiff had obtained drug test results that contradicted the results of the first test by the Defendant laboratory, knew that Plaintiff complained that there were problems with the drug test that questioned its veracity, but callously failed to include that fact when they disseminated and published the Plaintiff's alleged illicit drug use to the Texas Work Force Commission and others. Further, Defendants knew or should have known that by using a questionable drug test that falsely accused Plaintiff of illicit and illegal drug use to a government entity, thereby making it public record, would require Plaintiff to disclose that fact to others, including potential employers, and in fact Plaintiff was forced to disclose, and did disclose to his current employer, L & F Distributors. These publications were made with malice and/or a lack of good faith and have injured the Plaintiff in his business, trade, occupation and/or profession, and in his ability to obtain future similar employment.

A reasonably prudent person and/or company would have known and foreseen that Plaintiff would have been compelled to communicate the reason and basis of his termination to third parties when Plaintiff sought employment, particularly since it was used as the basis for Plaintiff's termination and denial of Plaintiff's unemployment benefits. Additionally, Plaintiff was compelled to communicate the reason for his termination to third parties on several occasions, including to Plaintiff's current employer, L & F Distributors. Defendants are liable for the repetition of the reason for and the basis of Plaintiff's termination. Further, Defendants, by and through their agents, servants, and employees communicated to others that Plaintiff had tested positive for illicit drug use, when in fact he contested the validity of the test, provided proof to Defendants that the tests were incorrect, and requested re-testing.

In addition, appellant also alleged an agency relationship as follows:

35

At all times whenever an employee, supervisor, manager, agent, attorney, representative, contractor, and/or servant of Defendants DISA, Dallas Mentor, and SAFETY TURN-A-ROUND performed some act in relation to the incident made the basis of this lawsuit, such individual was performing acts in such a manner that Defendants WHM and Exxon are liable for the misconduct of Defendant DISA, Dallas Mentor, and SAFETY TURN-A-ROUND employees, supervisors, managers, agents, representatives, contractors, and/or servants.

## C. WHM's Grounds for Summary Judgment

In its traditional and no-evidence motion for summary judgment, WHM argued in relevant part as follows:

Plaintiff has not identified any false statement by WHM and has admitted that he has no evidence of any false statement by WHM that can support a claim for defamation. Plaintiff admitted that he has no evidence that his April 10, 2008 drug screen is false or inaccurate. Plaintiff was advised that he could retest the same sample with DISA, but he did not. Plaintiff admitted that he took no action to prove that his sample provided and tested by DISA standards was not in fact his own. Plaintiff testified that he did not request a DNA test on his April 10, 2008 sample. As an initial premise, however, as stated above, WHM has never made a defamatory statement. As admitted by Plaintiff all that WHM has ever stated is that Plaintiff needed to get it (his test results) cleared with DISA. Plaintiff has repeatedly indicated that WHM's statements are literally true. Plaintiff has not identified any false statement to support a claim of defamation. Consequently, WHM is entitled to summary judgment.

In addition to the foregoing, WHM also argued that it was entitled to judgment as a matter of law because any alleged statement by WHM was protected by qualified or absolute privilege:

Plaintiff cannot identify any false statements made by WHM or any statements made with malice that are not protected by the qualified privilege. Moreover, even if any false statements were made, Plaintiff has no evidence that any statement made by WHM was not privileged or that it was motivated by actual malice to defeat such privilege. The only asserted defamatory statement was the notice from the Texas Workforce Commission relating to Plaintiff's unemployment benefits. Plaintiff claims it was defamatory to be "terminated." Plaintiff has not identified any persons other than ExxonMobil and the Texas Workforce Commission to which any communication occurred, any statements made by WHM are

36

protected by qualified privilege because they were limited to parties with a legitimate business interest (Exxon Mobil) and in response to Plaintiff's claim with the Texas Workforce Commission, which Plaintiff initiated himself. Statements made during Texas Workforce Commission proceedings are privileged. Moreover, as a condition of Plaintiff's employment with WHM, Plaintiff consented to become and remain DISA active. Thus, Plaintiff's defamation claims fail, and summary judgment for WHM is proper.

With respect to appellant's self-compelled defamation allegations, WHM argued

as follows:

Plaintiff also makes a claim for "self-compelled" defamation. In particular, he claims that he was compelled to tell family members and his current employer that he was discharged because he failed a drug test.

. . .

Even assuming, *arguendo*, that WHM's comments to Plaintiff were somehow defamatory, to establish self-compelled defamation Plaintiff must provide evidence that he was unaware of the alleged defamatory nature of the communication at the time he published his positive drug test results to third parties.

Clearly, Plaintiff was aware of the derogatory content of his own statements, and he told several third parties that he tested positive for marijuana, including his current employer. Notably, this information did not prevent his current employer from hiring him or cause him to lose friends or acquaintances. Thus, no evidence exists to support Plaintiff's claim of self-compelled defamation, and WHM is entitled to judgment as a matter of law.

## D. Appellant's Response to WHM's Grounds for Summary Judgment

In his response, appellant argued in relevant part as follows:

WHM alleges that there is no evidence that it made any statements regarding Plaintiff's failed drug test. However, WHM fails to acknowledge the potential liability for the defamatory statements made by its agent, Defendant DISA and/or its laboratory Defendant Dallas Mentor, to whom WHM gave express and implied authority to carry out its drug testing policy. There is no question DISA and/or Dallas Mentor have stated that Plaintiff used marijuana, and failed a random drug test. As set forth above, the attached evidence clearly shows that there is a genuine issue of material fact regarding whether Plaintiff did, in fact, use illegal drugs

37

and fail the drug test, including a second "clean" drug test taken a few days later. As such, the defamatory statements of DISA and/or Dallas Mentor, which are WHM's (as well as Exxon's agents) agents and representatives for drug testing, are impugned to WHM for these false statements.

WHM also argues that there is no evidence that it published any false statements regarding Plaintiff. First, as indicated above, DISA's and/or Dallas Mentor's conduct of falsely accusing Plaintiff of using drugs and failing a drug test is impugned to WHM, as its agent for the implementation of it's [sic] drug policy. Second, while WHM is correct that the Texas Supreme Court has not expressly accepted or rejected the doctrine of self-publication, several courts of appeals, including the 13th Court, have accepted the doctrine. Further, WHM misstates the law that these appellate courts require a showing that the Plaintiff must not know the statement was defamatory when he self-published it, nor is that the standard set forth by the 13th Court of Appeals.

## E. Discussion

On appeal, appellant argues the following:

Rincones does not deny that WHM and Exxon may have an affirmative defense of qualified privilege. The privilege, however, is not absolute; it is lost when statements are made with actual malice . . . .

Inasmuch as Rincones submitted evidence that WHM republished the DISA drug test results after it knew he alleged they were false, and provided proof to WHM that they were false, without also publishing those facts, WHM's and Exxon's qualified immunity does not apply because they were made with actual malice. At the very least, genuine issues of material fact exist regarding whether the privilege applies, and the trial court's granting of summary judgment was error.

As set forth above, the trial court did not specify the grounds on which it granted WHM's motion for summary judgment on appellant's claim for defamation. Therefore, to successfully challenge the summary judgment on appeal, it is appellant's burden to negate each possible ground for summary judgment. *See Kiger v. Balestri*, 376 S.W.3d 287, 290 (Tex. App.—Dallas 2012, no pet.) ("When, as in this case, the trial court does not state the basis for granting summary judgment, the appellant must show on appeal

38

that each independent ground alleged is insufficient to support the summary judgment granted."); *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex. App.—Fort Worth 2002, pet. denied) ("When, as in this case, the trial court's judgment rests or may rest upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made."). One such ground is the affirmative defense of qualified privilege. *See Johnson*, 891 S.W.2d at 646.

Appellant argues that the trial court erred in granting summary judgment on this basis because he presented summary judgment evidence to raise a genuine issue of material fact regarding whether the privilege applies; however, as noted above, in his response to WHM's motion for summary judgment, appellant did not make this argument or direct the trial court's attention to the evidence that arguably raises a genuine issue of material fact. *See Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("Under the new rule, the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every new ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing."). "A summary judgment may not be reversed on a ground not raised in the trial court." *Swinehart v. Stubbeman*, 48 S.W.3d 865, 885 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also Shelton v. Sargent*, 144 S.W.3d 113, 129 (Tex. App.—Fort Worth 2004, pet. denied). Therefore, appellant cannot challenge this ground for summary judgment for the first time on appeal. *See Roark v. Stallworth Oil & Gas*, 813 S.W.2d 492, 495 (Tex. 1991) ("Under rule 166a(c) of our Rules of Civil Procedure, issues that are not expressly presented to the trial court by written motion, answer or response will not serve as

grounds for reversal of a summary judgment on appeal."); *Pinnacle Anesthesia Consultants, P.A. v. St. Paul Mercury Ins. Co*., 359 S.W.3d 389, 397 (Tex. App.—Dallas 2012, pet. denied) ("[W]e cannot reverse a summary judgment on a ground not raised below."). Accordingly, we conclude that appellant has not demonstrated that the trial court committed reversible error in granting summary judgment in favor of WHM on his defamation claim.

Appellant's sixth issue is overruled.

## VII. DEFAMATION CLAIM AGAINST EXXON

In his seventh issue, appellant argues that the trial court erred in granting summary judgment in favor of Exxon on his defamation claim.

## A. Exxon's No-Evidence Grounds for Summary Judgment

In its no-evidence motion for summary judgment, Exxon argued that it was entitled to judgment as a matter of law on appellant's defamation claim on the following grounds:

> In this case, Plaintiff has no evidence of any written or oral false statement made by ExxonMobil to support any claim of defamation. To be sure, Plaintiff has not and cannot identify any false statement made by ExxonMobil to support his defamation claim. Thus, without evidence of any written or oral false statement made by ExxonMobil, Plaintiff's defamation claims fail. Accordingly, summary judgment is appropriate.
>
> . . .
>
> Although the Texas Supreme Court has yet to adopt or approve a cause of action for self-compelled defamation, some authorities indicate that self-publication of a defamatory statement occurs: (1) if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature; and (2) if the circumstances indicated that communication to a third party was likely. As noted above, truth is a complete defense to a defamation case.

Here, Plaintiff's self-compelled defamation claim fails as he has no evidence of any false statement made by ExxonMobil. Further, Plaintiff's self-compelled defamation claim fails because he has no evidence of and cannot prove that he was unaware of the nature of publishing his positive test results to third-parties, including his current employer. Moreover, because truth, even substantial truth, is a defendant to defamation claims, Plaintiff's claim is defeated by the fact that he has no evidence that the drug test result he received for the sample he provided to DISA on April 10, 2008 was false. Thus, based on the foregoing, Plaintiff's claim for self-compelled defamation also fails, and summary judgment should be granted.

## B. Appellant's Response to Exxon's No-Evidence Grounds

In his response, appellant argued as follows:

Defendant Exxon alleged that there is no evidence that Defendant Exxon made any statement regarding Plaintiff's failed drug test. However, Exxon fails to acknowledge the potential liability for the defamatory statements made by its agent, Defendants DICA [sic] and/or Dallas Mentor, to whom Exxon gave express and implied authority to carry out its drug testing policy. There is no question that Defendants DICA [sic] and/or Dallas Mentor have stated that Plaintiff used marijuana, and failed a random drug test. As set forth above, the attached evidence clearly shows that there is a genuine issue of material fact regarding whether Plaintiff did, in fact, use illegal drugs and fail the drug test, as alleged by Defendants DICA [sic] and/or Dallas Mentor. As such, the defamatory statements of Defendants DICA [sic] and/or Dallas Mentor, which are Exxon's agents and representative for drug testing, are impugned to Defendant Exxon for these false statements.

Defendant Exxon also alleges that there is no evidence that it published any false statements regarding Plaintiff. First, as indicated above, Defendant DICA's [sic] and/or Dallas Mentor's conduct of falsely accusing Plaintiff of using illegal drugs and failing a drug test is impugned to Defendant Exxon, as its agent for the implementation of Exxon's drug policy. Second, while Defendant Exxon is correct that the Texas Supreme Court has not expressly accepted or rejected the doctrine of self-publication, several courts of appeals, including the 13th Court, have accepted that doctrine based upon whether it was reasonably foreseeable that a plaintiff would be required to advise others, including potential employers, of the defamatory statements.

## C. Discussion of Exxon's No-Evidence Grounds

41

To avoid summary judgment, appellant had the burden to produce more than a scintilla of evidence to establish that Exxon made a false statement about him. *See Zapata*, 997 S.W.2d at 747. In his response, appellant relied on summary judgment evidence that established that DISA stated to WHM that appellant had failed his random drug test. As noted above, appellant pled an agency relationship between DISA and Exxon. In his response, appellant argued that Exxon had failed to address the statement DISA made to WHM, which appellant maintains was false and also imputed to Exxon by virtue of the alleged agency relationship. Exxon did not argue by written motion, answer, or response that the allegedly false statement made by DISA to WHM was not imputed to Exxon by virtue of the agency relationship alleged by appellant. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."). Based on the foregoing, we conclude that appellant produced more than a scintilla of evidence to defeat Exxon's no-evidence motion for summary judgment on his defamation claim.

## D. Exxon's Traditional Grounds for Summary Judgment

In its traditional motion for summary judgment, Exxon argued, among other things, that "Plaintiff cannot identify any false statements made by ExxonMobil or any statements made with malice that are not protected by the qualified privilege."

## E. Appellant's Response to Exxon's Traditional Grounds

We have reviewed the record, and there is no indication that appellant filed a response to Exxon's traditional motion for summary judgment.

## F. Discussion of Exxon's Traditional Grounds

As set forth above, in his appellate brief, appellant does not dispute that Exxon has an affirmative defense based on qualified privilege, but he maintains that the privilege does not apply to statements made with malice. Although appellant maintains that his summary judgment evidence was sufficient to raise a genuine issue of material fact about whether the statements at issue were made with malice, he failed to make that argument in a written response to Exxon's traditional motion for summary judgment. *See Swinehart*, 48 S.W.3d at 885 ("A summary judgment may not be reversed on a ground not raised in the trial court."). Therefore, appellant cannot make this argument for the first time on appeal. *See Roark*, 813 S.W.2d at 495; *Pinnacle Anesthesia*, 359 S.W.3d at 397 ("[W]e cannot reverse a summary judgment on a ground not raised below."). Accordingly, we conclude that appellant has not established that the trial court erred in granting summary judgment in favor of Exxon on his defamation claim.

Appellant's seventh issue is overruled.

## VIII. NEGLIGENCE CLAIM AGAINST EXXON

In his eighth issue, appellant argues that the trial court erred in granting summary judgment in favor of Exxon on his negligence claim.

## A. Applicable Law

"Negligence is no more than breach of a legal duty; the tort becomes actionable when the breach causes injury." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). "The common law doctrine of negligence consists of three elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "The threshold inquiry in a negligence case is duty." *Id.*

43

"The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort." *Id.* "Moreover, the existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.*

## B. Appellant's Relevant Pleadings

In his live petition, appellant alleged the following:

The Defendants DISA, DALLAS MENTOR, AND SAFETY TURN-A-ROUND and EXXON owed a duty to Plaintiff to properly and accurately test and analyze Plaintiff's drug test results, as well as follow its rules, regulations and protocol for such testing. Through their acts and omissions herein set forth, these Defendants breached that duty to Plaintiff. Specifically, these Defendants were negligent as follows:

    a. Improperly administering a random drug test to Plaintiff;

    b. Inaccurately analyzing the drug test results;

    c. Failing to thoroughly investigate and compare its test results with the test results obtained by Plaintiff through LabCorp Houston, once it was informed by Plaintiff of the second test results; and

    d. Failing to follow the Federal Drug Administration's recommendations that positive results be confirmed using a different test method;

    e. Failing to advise Plaintiff's employers that a positive test result does not always mean a person took illegal drugs, as a variety of facts can influence the reliability of drug tests;

    f. Disseminating the drug test results, without thoroughly verifying their accuracy, to Plaintiff's employers, which they knew, or should have known, would lead to Plaintiff's termination; and

    g. Failing to allow Plaintiff to properly retest to contest the false positive result.

The acts and/or omissions of these Defendants as set forth above are the proximate cause of damages sustained by Plaintiff.

44

In addition to the foregoing, appellant also pled that "[a]t all times, Defendant EXXON supervised and/or controlled Plaintiff's work assignments, schedule and duties; as such, Defendant EXXON was also Plaintiff's employer for all intents and purposes."

## C. Exxon's Grounds for Summary Judgment

In its traditional and no-evidence motion for summary judgment, Exxon argued for summary judgment on the following grounds:

> Plaintiff waived any and all claims related to substance abuse testing based on his consent to WHM's Substance Abuse Policy. As a condition of Plaintiff's employment, he was required to enroll with DISA pursuant to WHM's Substance Abuse Policy. Plaintiff agreed to this policy and was a DISA participant. Importantly, the Agreement signed by Plaintiff includes a waiver of claims. The Agreement and consent form states that Plaintiff agrees to "hold WHM . . . harmless from any and all liability in connection with the testing for drug[s]." Because Plaintiff expressly agreed to waive any and all claims based on substance abuse testing, his remaining claims alleged in his [live petition (i.e., negligence and tortious interference with a contract)] fail, and summary judgment is appropriate.
>
> . . .
>
> Plaintiff alleges that ExxonMobil is liable for negligence based on an agency theory for the alleged acts or omissions of Dallas Mentor (a DISA-approved substance abuse testing collection site) and DISA (a third-party substance abuse testing administrator). Thus, Plaintiff must prove that Defendant owed Plaintiff a legal duty, breached the legal duty and that damages proximately resulted from the breach. However, Plaintiff cannot prove the essential elements of this cause of action. Moreover, even if he could, Plaintiff's claims are barred by the exclusivity provisions of the Texas Workers' Compensation Act. Thus, summary judgment for ExxonMobil on Plaintiff's negligence claims is proper.
>
> . . .
>
> Plaintiff has no evidence that ExxonMobil owed any duty to Plaintiff. ExxonMobil was not Plaintiff's employer. ExxonMobil did not have a contract with Plaintiff, DISA or Dallas Mentor. Notwithstanding, even if a duty existed, Plaintiff has no evidence of a breach of any supposed duty. Thus, summary judgment is proper.

Under an agency theory, Plaintiff alleges that ExxonMobil is liable for the alleged acts of third parties—DISA and Dallas Mentor. However, Plaintiff has no evidence of any agency relationship between ExxonMobil and either Dallas Mentor (DISA-approved substance abuse testing collection site) or DISA (the third party substance abuse testing administrator). In fact, ExxonMobil has no contractual relationship with either DISA or Dallas Mentor and denies any agency relationship. ExxonMobil does not control the means or manner that DISA or Dallas Mentor operate their companies. ExxonMobil does not have any employees onsite at DISA or Dallas Mentor. Plaintiff has no evidence to indicate that anyone at ExxonMobil was present or participated in any way related to his substance abuse testing. To be clear, DISA's contractual relationship is with WHM, not ExxonMobil. ExxonMobil has no role in selecting Dallas Mentor as the collection site for Rincones to submit his drug testing sample on or about April 10, 2008. In accordance with its Agreement with WHM, ExxonMobil is only concerned with the information it receives from WHM as to whether individuals are qualified to work under Exhibit H to the Agreement. Thus, summary judgment is proper.

### D.  Appellant's Response to Exxon's Grounds for Summary Judgment

In his response, appellant argued as follows:

First and foremost, nowhere in the alleged release is Defendant WHM's sole client, Exxon, mentioned in the alleged waiver. Second, even if Exxon was listed, the release relied on by Defendant Exxon is neither conspicuous nor sufficiently specific to put Plaintiff on notice of his waiver of claims as required by the Texas Supreme Court . . . .  Third, Exxon has produced no evidence that the alleged waiver was supported by any consideration, a requirement for a valid, enforceable contract . . . .

For this reason, Defendant Exxon's basis for summary judgment must fail.

. . .

Exxon [also] argues that it had no duty to Plaintiff in regards to the drug testing it required WHM and its employees (including Plaintiff) [to] undergo in order to work at Exxon facilities.

The existence of a duty is generally a question of law. Generally speaking, foreseeability of the risk is the most important factor courts look at to determine if a duty exists, which includes whether the injury to the plaintiff was reasonably foreseeable. It is undisputed that the results of a positive drug test—even one in error—was that Plaintiff would be "inactive" and unable to work at an Exxon facility, which is the sole source or location for WHM employees. As such, a false positive drug test which

46

requires that Plaintiff not be allowed to work and/or would cause Plaintiff to lose his job was clearly foreseeable, and a duty does exist for Exxon.

Further, Plaintiff is not making any failure-to-warn or negligent misrepresentation claim against Exxon. Rather, Plaintiff is alleging that Defendant DISA owed a duty to Plaintiff to use reasonable care in performing the tests and reporting the results, and that Exxon and WHM empowered DISA (as well as other TPAs) as agents to implement its drug testing policy. As such, Exxon is liable as the principal where DISA and/or its drug testing contractors are negligent in performing the test. An agent is a person who is authorized by the principal to transact business or manage some affair on the principal's behalf, such as the implementing of Exxon's and WHM's drug testing policy.

In addition, because Exxon specifically required WHM, Plaintiff's employer, to use one of a limited number of specific third-party administrators (TPAs) to perform drug testing and follow rigid testing guidelines, Exxon has a duty to ensure that the TPAs are proper, valid entities that use proper protocol and guidelines for testing. The evidence attached to this motion is that the TPA, Defendant DISA, did not follow the proper protocol and guidelines, and in fact mixed-up Plaintiff's urine so that a false result was found that [sic] which prevented Plaintiff from being able to work with WHM. While Exxon and WHM want to argue that it was not the employer and did not choose the specific TPA (i.e. DISA) that performed the bad test, these arguments merely illustrate the fact that there are material issue of fact regarding Exxon's duty.

Exxon argues that even if a duty can be found, it cannot be held liable under the Texas Workers Compensation Act (TWCA) exclusive remedy bar. Despite arguing ad nausea that Exxon was not Plaintiff's employer (and in fact was one of the basis for this Court's previous granting of Exxon's first summary judgment), Exxon seeks to invoke the exclusive remedy of the Texas Workers without clearly defining how it takes advantage of this defense while maintaining its position that it was not Plaintiff's employer. The TWCA exclusive remedy defense is available to employers only.

## E. Discussion of Exxon's Fourth Ground for Summary Judgment

In its fourth ground, Exxon argued that, even if there was evidence of a duty, there was no evidence of a breach. In his response, appellant argued that "[t]he evidence . . . is that the TPA, Defendant DISA, did not follow the proper protocols and guidelines." Yet, this argument was made with respect to the existence of a duty, not

47

with respect to the challenged element of breach. We have reviewed appellant's response and conclude that appellant failed to respond to Exxon's no-evidence point regarding the element of breach. *See Roark*, 813 S.W.2d at 495 ("Under rule 166a(c) of our Rules of Civil Procedure, issues that are not expressly presented to the trial court by written motion, answer or response will not serve as grounds for reversal of a summary judgment on appeal."). In his response, appellant did not direct the trial court's attention to any evidence that arguably raised a fact issue about whether Exxon breached a duty owed to appellant. In his appellate brief, appellant does not address the element of breach or whether the trial court erred in granting summary judgment on that basis. *See Kiger*, 376 S.W.3d at 290 ("When, as in this case, the trial court does not state the basis for granting summary judgment, the appellant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted."). Accordingly, we conclude that appellant has failed to meet his burden to negate all possible grounds for the trial court's summary judgment in favor of Exxon on his negligence claim.

Appellant's eighth issue is overruled.

## IX. CLAIM AGAINST EXXON FOR TORTIOUS INTERFERENCE WITH CONTRACT

In his ninth issue, appellant argues that the trial court erred in granting summary judgment in favor of Exxon on his tortious interference with a contract claim.

### A. Applicable Law

A claim for tortious interference with a contract consists of four elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3)

48

interference that proximately caused damage; and (4) actual damage or loss. *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

## B. Appellant's Relevant Pleadings

In his live petition, appellant alleged the following:

The Defendants DISA, Dallas Mentor, SAFETY TURN-A-ROUND and EXXON knew of Plaintiff's employment by Defendants [sic] WHM and that if he failed a drug test, he would not be allowed to continue to work. By disseminating and publishing the inaccurate drug test results as set forth above, these Defendants not only damaged Plaintiff's reputation and character, but cast doubt on Plaintiff's ability to perform his job. Plaintiff was ultimately terminated from his employment by his employers, Defendants WHM and/or EXXON, as a direct result of these inaccurate test results. Furthermore, because of the negligence of Defendants DISA, Dallas Mentor, SAFETY TURN-A-ROUND and EXXON, it was reported that Plaintiff tested positive for drug use, which was false, and prevented [Plaintiff] from working for Defendant EXXON through Defendant WHM.

Moreover, Defendants DISA, Dallas Mentor, SAFETY TURN-A-ROUND and EXXON failed to properly investigate and/or perform a comparison analysis of why the second drug test, taken by Plaintiff a mere four (4) days after the initial test, came out negative for any illicit drug use. As a result of their acts and omissions, these Defendants directly influenced Plaintiff's employers to terminate him, thus causing them to breach their employment contract and/or business relations with Plaintiff.

## C. Exxon's Grounds Summary Judgment

In its motion for summary judgment, Exxon argued the following:

First, Plaintiff has no evidence of a contract subject to interference. Plaintiff was an at-will employee of WHM. Despite Plaintiff's deposition testimony to the contrary, Plaintiff pleads that ExxonMobil is his employer. However, Plaintiff admitted that he has no contract with ExxonMobil with which to interfere. ExxonMobil denies that Plaintiff was its employee. There is no evidence that ExxonMobil interfered in any way with Plaintiff's employment with WHM. To be sure, ExxonMobil did not have a contract with Plaintiff, DISA or Dallas Mentor. While ExxonMobil did have a contract with WHM, it is black letter law that a party cannot interfere with its own contract. Thus, Plaintiff's tortious interference with contract claim fails, and summary judgment in favor of ExxonMobil should be granted.

Moreover, Plaintiff admitted that he was not fired by his employer WHM, and he just needed to obtain "active" status with DISA to work for WHM. Plaintiff's employment relationship with WHM is conditioned upon Plaintiff's own actions, to become DISA "active." To date, Plaintiff has not retested or taken any action to obtain "active" DISA status. The onus is on Plaintiff to obtain "active" DISA status to receive work assignments from WHM, not ExxonMobil.

Likewise, Plaintiff failed to identify any intentional tort allegedly committed by ExxonMobil. In fact, there is no evidence of any allegedly willful or intentional interference with any contract committed by ExxonMobil . . . .

Finally, Plaintiff has no evidence that any alleged interference by ExxonMobil proximately caused him any damages.

## D. Appellant's Response to Exxon's Grounds for Summary Judgment

In his response, appellant argued the following:

Exxon claims Plaintiff cannot meet elements (1) [an existing contract] and (2) [an intentional and willful act of interference] because he as [sic] at will employee of WHM and there is no evidence of any intentional or willful act of interference. However, the fact that the contract interfered with is terminable at will is no defense. In addition, according to Exxon's own affidavit, Exxon informed WHM that Plaintiff could not work at its facilities after it became aware of Plaintiff's discrimination claim with the EEOC, even though it knew that Plaintiff informed the EEOC and WHM that the drug test was false. This, in effect, amounted to Plaintiff's termination, since Exxon is the sole and/or major client of WHM, and WHM admits that it had no other work for Plaintiff. Intentional interference does not require intent to injure. Rather, the actor must desire to cause the consequences of his or her act or believe those consequences are substantially certain to result from it.

## E. Discussion of Exxon's Grounds for Summary Judgment

As set forth above, Exxon moved for summary judgment on the basis that there is "no evidence that any alleged interference by ExxonMobil proximately caused [appellant] any damages." We have reviewed appellant's response and conclude that appellant did not address this challenged element in his response. *See Roark*, 813 S.W.2d at 495. Nor has appellant addressed this challenged element on appeal. *See*

50

*Kiger*, 376 S.W.3d at 290. Accordingly, we conclude that the summary judgment must be affirmed on this ground. *See Harris v. Ebby Halliday Real Estate, Inc.*, 345 S.W.3d 756, 760 (Tex. App.—El Paso 2011, no pet.) ("Because the Harrises failed to address Halliday's no-evidence challenge to the standard of care element, the judgment on their negligence claim may be affirmed on that ground alone.").

Appellant's ninth issue is overruled.

## X. STATUTE OF LIMITATIONS

In his tenth issue, appellant contends that the trial court erred in granting summary judgment in favor of DISA on appellant's claims for defamation, negligence, and tortious interference with a contract based on the statute of limitations.

### A. Applicable Law

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The Texas Supreme Court has explained the standard as follows:

> [T]he defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.

*Id.*

### B. Appellant's Relevant Pleadings

In his live petition, appellant did not plead the discovery rule or any other tolling provision for the applicable statute of limitations on his claims. In its original answer to

51

appellant's live petition, DISA alleged that appellant's claims were barred by the applicable statute of limitations.

## C. DISA's Grounds for Summary Judgment

In its motion for summary judgment, DISA argued in relevant part as follows:

Rincones asserts three causes of action against DISA: (1) negligence; (2) tortious interference with contract; and (3) defamation (libel and slander). It has long been the law in Texas that "a cause of action accrues when a party has been injured by actions or omissions of another." Taking Rincones' allegations in [his live petition] as true as the Court must on summary judgment, these three causes of action began to accrue against DISA on April 14, 2008. On that day, Rincones learned to his "surprise and amazement" that he had tested positive for drug use, but believed the result was erroneous because Rincones "has never used illicit and/or illegal drugs[,]" and also learned that WHM and Exxon refused to allow him to return to work until he contacted DISA to resolve this issue.

The statute of limitations for a negligence cause of action under Texas law is two years. The statute of limitations for a tortious interference with contract claim is also two years. The statute of limitations for defamation (libel and slander) is one year.

Rincones, however, failed to assert any claims against DISA until he filed his Fourth Amended Petition on August 10, 2010—two years and four months after the statute of limitations on these three claims began to accrue. Said differently, the statute of limitations on Rincones' defamation claim against DISA expired on April 14, 2009. When Rincones first asserted this claim against DISA on August 10, 2010, the statute of limitations had been expired for nearly one year and four months. Similarly, the statute of limitations on Rincones' negligence and tortious interference with contract claims against DISA expired on April 14, 2010. When Rincones first asserted these claims against DISA on August 10, 2010, the statute of limitations had been expired for almost four months.

DISA has met its summary judgment burden by conclusively proving Rincones' three claims against DISA are barred by the applicable statute of limitations. The Court should grant summary judgment for DISA and dismiss DISA from this lawsuit.

In addition to the foregoing, DISA also argued that appellant's claims were barred under the doctrine of misidentification:

This is a case of misidentification: Rincones sued the wrong party and the statute of limitations expired before he corrected his error. DISA is not associated with, and has no connection to, any business organization named DICA. Although Rincones knew about WHM's Deposition of Written Questions to DISA in August 2009 and testified extensively about DISA in his November 2009 deposition, he chose to add DICA as a defendant to this lawsuit in his Third Amended Petition on February 23, 2010 and, in fact, served DICA on June 11, 2010. . .

Moreover, this is not a case where the proper defendant had notice of the suit or would not be disadvantaged by the mistake. It is undisputed that DISA had no notice of Plaintiff's Third Amended Petition until it was served on August 26, 2010 with Plaintiff's Fourth Amended Petition. It is also undisputed that DISA has no corporate relationship—or any relationship at all—with DICA. Rincones' decision to add DISA to this lawsuit three months before trial would not only place DISA at a severe disadvantage, but would also result in unnecessarily delayed justice to all other parties involved in this case.

Plaintiff sued the wrong party on February 23, 2010. His claims against DISA . . . are barred by the applicable statute of limitations.

In addition to the foregoing, DISA also argued as follows:

Even if the Court finds Rincones merely misnamed "DISA" as "DICA" in his Third Amended Petition, . . . his claims against DISA are still barred as a matter of law.

First, Rincones' defamation claims against DISA remain barred by the applicable one year statute of limitations. Even assuming Rincones first put DISA on notice of this lawsuit when he filed his Third Amended Petition on February 23, 2010, which DISA denies, the statute of limitations on Rincones' defamation claims expired on April 14, 2009, more than 10 months before asserting the claims.

Moreover, Rincones' negligence and tortious interference with contract claims are barred as a matter of law because Rincones failed to exercise diligence in serving DICA and DISA. The filing of a lawsuit will not toll the running of limitations unless due diligence is exercised in the issuance and service of citation. . .

Rincones first asserted negligence and tortious interference [with] contract claims against DICA on February 23, 2010, a little less than two months before the statute of limitations on these claims expired. Rincones, however, did not serve DICA with notice of these claims until June 11, 2010, nearly four months after first naming DICA as a defendant, and two

53

months after the statute of limitation expired. Likewise, Rincones did not serve DISA with notice of these claims until August 26, 2010, more than six months after Rincones first brought DICA into this lawsuit, and more than four months after the statute of limitations expired.

Rincones cannot justify his failure to timely serve DISA. He has known of DISA's role in his April 11, 2008 positive drug test since April 14, 2008. He certainly received a copy of WHM's Deposition on Written Questions in August 2009, and, more critically, testified extensively about DISA during his November 2009 deposition. As a matter of law, Rincones failed to exercise the diligence in service necessary to toll the statute of limitations on his negligence and tortious interference with contract claims.

## D. Appellant's Response to DISA's Grounds for Summary Judgment

In his response, appellant argued in relevant part as follows:

There . . . is no fact question that Plaintiff has not been allowed to continue working because he alleged[ly] failed a drug test performed by DISA and its specimen collector agent, Turnaround, and that WHM listed him as "Fired" with the TWC on September 11, 2008 for allegedly failing a drug test. As such, Plaintiff[']s tortious interference of the at-will employment contract action did not accrue until September 11, 2008, the date of his termination, and the suit against DISA is timely because it was sued and served with process prior to August 2010, within 2 years of the date of his termination.

Further, it is undisputed that DISA had a duty to counsel Plaintiff after he allegedly tested positive for drugs so that he can regain "active" status. Plaintiff was an employee in "inactive" status until he was officially terminated by WHM on September 11, 2008. Every day that Defendant DISA failed to meet its duty while Plaintiff was an employee meant that he was "inactive" and could not work and earn a living, thereby causing him injury on a daily basis until his September 11, 2008 termination, when that obligation (and Plaintiff's employment) ceased.

A cause of action accrues on the date a defendant's wrongful act causes a legal injury. In addition, because Defendant DISA's duty continued until his termination, and the continued violations of that duty prevented Plaintiff from becoming "active" and not able to work, the cause of action accrues when the tortious conduct ceases, which would have been when Plaintiff was officially terminated, e.g. September 11, 2008. As such, the continuing tort doctrine applies, the limitations period began on the date the cause of action accrued, which was Plaintiff's termination date of September 11, 2008, and Plaintiff's suing and serving DISA in August 2010 is timely.

. . .

Even if the accrual date is April 2008, as DISA argues and Plaintiff denies, the limitations should be tolled under the facts of the case, Plaintiff's due diligence creates a fact issue regarding limitations, and/or DISA and its agents cannot complain when they were clearly aware of suit and their actions prevented timely service.

In addition to the foregoing, appellant also argued the following:

Plaintiff attempted to bring in the DISA defendant for the first time in February 2010 with the filing of Plaintiff's Third Amended Petition, well within the statute of limitations period as argued by Defendant DISA. . .

The pleadings stated "DICA" although the correct entity which Plaintiff's counsel [later learned] was the proper DISA defendant was listed as "DISA" with the Texas Secretary of State. Plaintiff believed it had the right party and did not take further steps to identify the proper party and/or obtain service based on the representations of Robynn Brown, the owner of Turnaround, Inc. and agent for DISA, that Plaintiff had sued the correct entities and that no further service was necessary. Therefore, simple spelling error was made at the time of filing suit, or attempt to file suit, against DISA in February 2010, and the proper party to the suit was aware of and recognized the suit, and falsely represented that further service was not necessary and that an answer would be filed.

The statute of limitations is tolled in cases of misnomer where the correct party has been served or is put on notice that he, she, or it is the intended defendant. Under these circumstances, the naming of DISA is a misnomer and the correction in August 2010 relates back to the February 2010 filing, since the agent of the correct party, Robynn Brown, was aware of the suit and allegations. Further, Defendant DISA also alleges that even if Plaintiff's Third Amended Petition filed in February 2010 is a misnomer situation, Plaintiff failed to use due diligence to serve process on either the misnamed defendant or the correct defendant until August 2010, which DISA argues is beyond the limitations period. Plaintiff offers the affidavit of his counsel . . . to explain the delay.

Specifically, based on Ms. Brown's representations that the correct party had been identified, that no service was necessary, and that an answer for both DISA and Turnaround would be made upon her receipt of the petition, Plaintiff's counsel did not take any further action to either identify the proper party and/or serve the party it had sued in February until it realized in August 2010 that the correct party has not been included in the petition. In addition to Ms. Brown's representations, Plaintiff was also

55

unable to make that determination earlier because the DISA defendant it did sue failed to file any answer after proper service, and the Defendants that had already answered (Exxon and WHM) failed to identify DISA and Turnaround as potential parties pursuant to their obligation of TRCP Rule 194.2(b). As such, due diligence in identifying and serving Defendant DISA was clearly used in this case, and at the very least the issue of due diligence as a prerequisite to the tolling of limitations is a fact issue.

In addition to the foregoing, appellant also argued the following:

In addition, the Texas Supreme Court has recognized that "where a plaintiff has made a mistake in the parties as to the defendant that should have been sued," like Plaintiff has done in this case, he should be given an opportunity to show that the defendant was aware of the suit, was not misled, or placed at a disadvantage in obtaining evidence to defend the suit before summary judgment is granted. Since this summary judgment was filed mere days after filing an answer, Plaintiff is only seeking the relief that the Texas Supreme Court has said he should be entitled [to] under the circumstances. Again, as the affidavit of Plaintiff's counsel shows, Defendant DISA's agent, Robynn Brown, was aware of this suit and claims against DISA and Turnaround in March 2010, within the limitations time period as calculated by Defendants. That was 8 months before the previous November 2010 trial setting in this case and 5 months before the discovery cut-off date as per the Agree Scheduling Order. Further, since the Court has continued the case, Defendant DISA cannot argue that it will be prejudiced or disadvantaged in this case by allowing Plaintiff's claims to proceed. Lastly, there is no question that there is a relationship between Defendant Brown and Defendant DISA, as Brown and her company, Turnaround, was the authorized agent for DISA where Plaintiff was directed to provide his specimen.

In addition to the foregoing, appellant also argued the following:

In the unlikely event the Court agrees that limitations accrued in April 2008 as argued by DISA, they should not be allowed to assert the defense under the equitable estoppel[] doctrine because DISA and/or its agents caused the delay of which they now complain. There is no question that Plaintiff sued the wrong DISA Defendant on February 23, 2010, which is within the 2 year status [sic] of limitations. However, the reason the proper DISA Defendant was not identified and sued earlier is because its agent Turnaround made false representations to Plaintiff's counsel which were relied upon to Plaintiff's detriment.

Specifically, on or about March 25, 2010, Plaintiff's counsel was contacted by Robynn Brown via telephone who represented that she was the owner of "the drug testing company", and requested a copy of the lawsuit to

provide to her attorney. Because of the difficulty in identifying the proper parties and obtaining service, Plaintiff[']s counsel asked Ms. Brown several times which entity she represented, but she failed and/or refused to clarify. However, Ms. Brown did represent that service was not necessary and that her attorney would be filing an answer on behalf of both DISA and Turnaround once she received the lawsuit, since it was her company that performed the drug testing made the basis of this lawsuit. The following day, Ms. Brown emailed Plaintiff's counsel again requesting a copy of the lawsuit, to which Plaintiff forwarded to Ms. Brown via email on March 29, 2010. Unfortunately, Ms. Brown never responded again and has yet to be served.

. . .

The evidence developed to date is clear that Turnaround is the authorized agent for specimen collection for Defendant DISA, the agent that took Plaintiff's sample for DISA which is the basis of this claim, and that Ms. Brown was at one time the owner of the company. Further, it is clear that Defendants EXXON and WHM, the entities that contracted with, approved, and/or hired DISA and/or Turnaround, failed to properly identify these parties, which left Plaintiff's counsel guessing on which party to sue. Plaintiff's counsel used due diligence in trying to find the correct defendant by searching the Texas Secretary of State website and discussing with counsel for Defendants EXXON and WHM on who the proper party was, but to no avail. Further, Plaintiff and his counsel relied on the representations of the reputed owner of Turnaround, Inc. and/or the agent of Defendant DISA when she said that the proper parties had been found, service was not necessary, and that she would instruct her attorney to file an answer for both defendants. The elements for equitable estoppel[] are met, and DISA should be stopped from asserting a limitations defense.

## E. Discussion of DISA's Grounds for Summary Judgment

First, with respect to appellant's defamation claim, DISA established that the cause of action accrued on April 14, 2008, when the allegedly defamatory statement was published. *See Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 323 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A defamation cause of action ordinarily accrues on the date the defamatory matter is published or circulated."). DISA also established that appellant's defamation claim has a one-year statute of limitations that expired on April 14, 2009. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (West

2002). As set forth above, appellant asserted the continuing-tort doctrine and argued that his causes of action accrued in September 2008 (when his employment was allegedly terminated). Even if that were true with respect to appellant's defamation claim, the claim would still be barred because the one-year limitations period would have expired in September 2009, well before appellant filed his third amended petition in February 2010 and his fourth amended petition in August 2010. As set forth above, appellant also argued that equitable estoppel barred DISA's statute of limitations defense; however, this argument was not made with respect to appellant's defamation claim. Accordingly, we conclude that DISA established its entitlement to judgment as a matter of law on appellant's defamation claim based on its affirmative defense of limitations.

Second, with respect to appellant's negligence and tortious interference with contract claims, appellant asserted that under the continuing-tort doctrine, his causes of action did not accrue until September 2008. *See Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] continuing tort is an ongoing wrong causing a continuing injury [that] does not accrue until the tortious act ceases."). If so, then the two-year limitations period on those claims did not expire until September 2010 and his claims filed in August 2010 would not be time-barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2011).

The Texas Supreme Court has neither "endorsed nor addressed" the continuing-tort doctrine. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005). Therefore, it is unclear whether the doctrine is viable, as appellant contends. In its motion for summary judgment, DISA did not address or attempt to negate the

58

continuing-tort doctrine as a basis for suspending the statute of limitations. *See State Farm Lloyds*, 315 S.W.3d at 532 ("Summary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion."). Thus, DISA failed to meet its burden to conclusively establish the limitations bar. *See Ray v. O'Neal*, 922 S.W.2d 314, 317 (Tex. App.—Fort Worth 1996, writ denied) ("When summary judgment is sought on the ground that limitations has expired, it is the movant's burden to conclusively establish the limitations bar, including the negation of a tolling or suspension statute raised by the nonmovant.").

Furthermore, as set forth above, appellant argued that even if the causes of action accrued on April 14, 2008, DISA was prohibited from asserting limitations as an affirmative defense based on the doctrine of equitable estoppel. *See Rendon v. Roman Catholic Diocese of Amarillo*, 60 S.W.3d 389, 391 (Tex. App.—Amarillo 2001, pet. denied) ("[E]stoppel may be invoked to defeat a claim of limitations."); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."). DISA did not address or attempt to negate equitable estoppel in its motion for summary judgment. *See State Farm Lloyds*, 315 S.W.3d at 532. Thus, DISA failed to meet its burden to conclusively establish the limitations bar. *See Ray*, 922 S.W.2d at 317.

59

Finally, as set forth above, DISA attempted to negate tolling based on misnomer by establishing that this was a case of misidentification. "Texas courts have recognized a distinction between misnomer and misidentification." *Enserch Corp. v. Parker*, 794 S.W.2d 2, 4 (Tex. 1990). "If the plaintiff merely misnames the correct defendant (misnomer), limitations is tolled and a subsequent amendment of the petition relates back to the date of the original petition." *Id.* at 4–5. "If, however, the plaintiff is mistaken as to which of two defendants is the correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled." *Id.* at 5. In his response, appellant argued that this is a case of misnomer and thus limitations was tolled. We have already concluded that DISA failed to meet its summary judgment burden to negate appellant's assertion of the continuing-tort doctrine and equitable estoppel. Therefore, it is unnecessary to decide whether DISA negated appellant's assertion of misnomer. *See* TEX. R. APP. P. 47.1.

Accordingly, appellant's tenth issue is sustained with respect to his causes of action for negligence and tortious interference with contract and overruled with respect to his cause of action for defamation.

## XI. BREACH OF CONTRACT CLAIM AGAINST DISA

In his eleventh issue, appellant argues that the trial court erred in granting summary judgment in favor of DISA on his breach of contract claim. DISA did not move for summary judgment on appellant's breach of contract claim. The trial court's order did not purport to grant summary judgment on appellant's breach of contract claim. The claim was asserted by appellant for the first time in his fifth amended petition, which was

60

struck by the trial court. Appellant's live petition, his fourth amended petition, did not allege a breach of contract claim. *See Randle v. NCNB Tex. Nat'l Bank*, 812 S.W.2d 381, 384 (Tex. App.—Dallas 1991, no writ) (affirming trial court's use of first amended original petition as live pleading after court struck second amended original pleading). Therefore, appellant has not demonstrated that the trial court committed any error involving his purported breach of contract claim.

Appellant's eleventh issue is overruled.

## XII. CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, as stated herein, and we remand the case for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
2nd day of May, 2013.